UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BABUTO M. RUDO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-02172 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 13 |
| | : | | |
| PETE GEREN, | : | | |
| Secretary of the Army, | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

### DENYING IN PART AND HOLDING IN ABEYANCE IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND HOLDING IN ABEYANCE IN PART THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff, a former servicemember, seeks judicial review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*., of the decision by the Army Board for Correction of Military Records ("ABCMR") regarding the characterization of his discharge from the Army in 1968 as based on unsuitability grounds. The defendant argues that there is sufficient evidence in the record to support the ABCMR's holding. Because the ABCMR's decision did not address the plaintiff's due process claim, the court grants in part the plaintiff's cross-motion for summary judgment and remands that claim to the ABCMR. Further, because adjudication concerning the plaintiff's other claims is more appropriately reserved until after the ABCMR has decided the plaintiff's due process claim, the court holds in abeyance its ruling on the other plaintiff's remaining APA claims.

## II.  BACKGROUND

### A.  Regulatory Framework

Under the Army Regulations in place in 1968, an Army soldier could be discharged upon a finding that he was "unsuitable" for further military service. *See* Admin. R. ("A.R.") at 66 (Army Regulation ("A.Reg.") 635-200, 635-212 ¶ 1). A discharge for unsuitability was proper if the soldier exhibited any one of the following: "(1) Inaptitude, (2) Character and behavioral disorders, (3) Apathy (lack of appropriate interest), defective attitudes and inability to expend effort constructively, (4) Alcoholism, (5) Enuresis (bedwetting), or (6) Homosexuality." A.R. at 67 (A.Reg. 635-212 ¶ (6)(b)).

Before removing a soldier on "unsuitability" grounds, the Army was required to establish that: (1) the solider was unlikely to develop "sufficiently to participate in further military training and/or become a satisfactory soldier" and (2) the soldier met the "retention medical standards" in place at the time. *See id.* at 66 (A.Reg. 635-212 ¶ 3(b)). To satisfy these requirements, a soldier's unit commander was required to refer the soldier for a medical evaluation and provide the medical examiners with "[s]ufficiently detailed information about the reasons for considering the individual . . . unsuitable" so that they would have a thorough understanding of the contemplated action. *Id*. at 68 (A.Reg. 635-212 ¶ 8). If the medical examiners determined that the solider met "retention medical standards," *i.e.* that he was medically fit for further military service, his discharge for unsuitability would be approved and the soldier would be sent back to his commanding officer for further processing of his discharge. *Id*. at 69 (A.Reg. 635-212 ¶ 9). If, however, the soldier was determined to be medically unfit for service, the discharge process pursuant to "unsuitability" grounds was halted. *Id*. (A.Reg. 635-212 ¶ 9).

Once the soldier was medically cleared for an unsuitability discharge, the commanding officer was required to provide him with the "basis of the contemplated separation and its effect." *Id.* (A.Reg. 635-212 ¶ 10(a)(1)-(3)). The "effect" of a soldier's separation was governed by the characterization of his service. Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot."), App. at 13 (A.Reg. 635-200 ¶ 1.8) (Separation as it Affects the Individual). In 1968, a soldier's service could be characterized as one of five general types of discharges, ranging from the most satisfactory characterization of service to the least satisfactory: "(1) Honorable, (2) General [u]nder honorable conditions, (3) Undesirable [u]nder conditions other than honorable, (4) Bad Conduct [u]nder conditions other than honorable, (5) Dishonorable." *Id.*, App. at 12 (A.Reg. 635-200 ¶ 1.5). An unsuitability separation could be characterized as either an "Honorable or General discharge," depending on the soldier's service record. A.R. at 66 (A.Reg. 635-212 ¶ 4(b)). Either characterization entitled a soldier to "full Federal rights and benefits," although "an undesirable or bad conduct discharge may or may not deprive the individual of veterans' benefits administered by the Veterans Administration." Pl.'s Cross-Mot., App. at 13 (A.Reg. 635-200 ¶ 1.8).

The commanding officer overseeing the discharge process was required under Army regulations to explain to the soldier his rights. A.R. at 69 (A.Reg. 635-212 ¶ 10(a)(1)-(3)). These rights included the right of the soldier to present his case before a board of officers, to submit statements on his own behalf and to be represented by counsel. *Id.* Alternatively, the soldier could waive these rights in writing. *Id.* A soldier who chose to waive his rights was required to submit a signed statement indicating that he had "been advised of the basis for his contemplated separation and its effect and the rights available to him." Pl.'s Cross-Mot., App. at 9 (A.Reg. 635-212 (Waiver Form)). This statement, in relevant part, read:

> I understand that I may expect to encounter substantial prejudice in civilian life in the event a general discharge under honorable conditions is issued to me. I further understand that as the result of issuance of an undesirable discharge under conditions other than honorable, I may be ineligible for many or all benefits as a veteran under both Federal and State laws, and that I may expect to encounter substantial prejudice in civilian life.

*Id.* After the soldier had been adequately informed of his rights under the applicable regulations, and either exercised or waived those rights in a signed statement, he was issued a final discharge certificate stating "the specific reason and authority for [his] discharge," effectively ending his service in the Army. *Id.*, App. at 10 (A.Reg. 635-212 ¶ 23).

### B. Factual Background

The plaintiff served in the Army from September 1966 to November 1968. Compl. ¶¶ 1, 2; Def.'s Statement of Material Facts ("Def.'s Statement") ¶¶ 1, 6. The majority of this time was spent on administrative duty due to medical conditions related to his knee and leg bone. Compl. ¶ 2; Def.'s Statement ¶ 4.

During his tenure, the plaintiff received several non-judicial punishments under Article 15 of the Uniform Code of Military Justice[1] for infractions such as visiting "off-limits" bars while in Vietnam, Compl. ¶ 7, smoking marijuana, *id.*, and going "absent without leave" or "AWOL," *id.* ¶¶ 9-11. In October 1968, as a result of the plaintiff's multiple reprimands pursuant to Article 15, his commander reduced his rank and recommended that he receive an administrative discharge for "unsuitability" due to apathy pursuant to Army Regulation 635-212. *Id.* ¶ 12; A.R. at 65-72.

In October 1968, as a part of his discharge processing, the plaintiff received a medical evaluation. A.R. at 100-103. As part of the evaluation, the plaintiff filled out a questionnaire

---

[1] A reprimand under Article 15 of the Uniform Code of Military Justice is a form of non-judicial military punishment which permits commanders to administratively discipline a servicemember without a court-martial. *See* 10 U.S.C.A. § 815(a).

which asked whether he suffered from certain ailments, to which he responded in the affirmative by checking the box next to the following conditions: depression, soaking sweats, shortness of breath and "nervous trouble of any sort." *Id*. at 100. Although the evaluating physician determined that the plaintiff was suffering from a "back condition," he made no other significant diagnoses or findings regarding any major medical conditions and, accordingly, referred the plaintiff for a mental health examination to determine whether the plaintiff was medically qualified for service. *Id*. at 100-103.

A psychiatrist in the Army's psychiatric clinic evaluated the plaintiff and diagnosed him with a "[s]ociopathic personality with passive-aggressive features." *Id*. at 106; Compl. ¶ 17. The examining psychiatrist determined that the plaintiff would "not adjust to further military service and further rehabilitative efforts probably [would] be nonproductive." *Id*. Specifically, the psychiatrist reported that:

> [the plaintiff] gives a history of marked social inadaptability prior to and during service. He has been arrested at least four times for such offenses as disorderly conduct and under age drinking. He joined the Army in September 1966 after he had impregnated one of his girlfriends and was not willing to pay the doctor's bill. While in the Army he has amassed several Articles 15 for such offenses as missing formation, going to an off limits bar in Vietnam, having possession of illegal drugs and AWOL. He uses poor judgment, is not committed to any productive goals and is completely unmotivated for further service.

*Id*. The psychiatrist concluded that the plaintiff was "mentally responsible, able to distinguish right from wrong and to adhere to the right, and ha[d] the mental capacity to participate in [administrative discharge] proceedings," and ultimately recommended that the plaintiff be discharged pursuant to Army Regulation 635-212 for unsuitability. *Id*.

The plaintiff's medical reports were then presumably forwarded to his commander. According to the plaintiff, however, his commander failed to provide any verbal explanation as to the effects of his pending discharge. Pl.'s Cross-Mot. at 13. Instead, the plaintiff chose to

5

waive his rights, Compl. ¶ 22; Def.'s Statement ¶ 18, and signed the standard waiver statement as described under Army Regulation 635-212, *see* Pl.'s Cross-Mot., App. at 9 (Waiver Form).

On November 5, 1968, after serving just over two years in the Army, the plaintiff was administratively discharged for unsuitability due to apathy, a separation under the category of a "General" discharge "under honorable conditions." Compl. ¶ 21. Although the plaintiff's medical evaluation diagnosed him with a sociopathic personality disorder, A.R. at 106, the plaintiff's discharge form made no mention of mental health problems being the reason for discharge and, instead, indicated that "[a]pathy, defective attitudes and inability to expend efforts constructively," were the reason[s] for his separation, A.R. at 379 (Pl.'s Discharge Certificate).

Following his administrative discharge, the plaintiff continued to suffer from mental health problems as well as drug addiction. Compl. ¶¶ 25, 27. He made repeated attempts to procure disability benefits from the Department of Veterans Affairs ("VA"), arguing that his drug dependence and mental problems were "service-connected disabilities."[2] Def.'s Statement ¶¶ 23-24. Nevertheless, the VA denied him benefits because his 1968 discharge included a mental health evaluation which had diagnosed him with a sociopathic personality disorder. *Id.* ¶ 26. At the time of his discharge, the plaintiff's mental health issues were considered to be a "pre-service"[3] disability. It was only after the recognition of Posttraumatic Stress Disorder ("PTSD") as a psychiatric disorder in the early 1980s that the plaintiff was able to begin distinguishing his mental health claim from his personality disorder. A.R. at 7-8 ¶ 13.

---

[2]  A veteran is ineligible for VA healthcare or disability compensation unless an injury or illness is "service-connected," or the veteran otherwise qualifies due to his indigent status. *See* 38 C.F.R. § 3.303.

[3]  A personality disorder diagnosed in military health records may be considered a "pre-service," or a pre-existing condition and therefore not an illness or injury that is service-connected. 38 C.F.R. § 3.303(c).

In July 1997, after several unsuccessful attempts to prove that his PTSD was service-connected, the plaintiff submitted new evidence to the VA and asked the VA's Board of Veterans' Appeals ("BVA") to re-open his claim. *Id*. at 10; Def.'s Statement ¶ 28. The BVA concluded that the plaintiff's new evidence revealed his involvement in several hostile actions in Vietnam and established a service-connection for PTSD. A.R. at 10. Accordingly, the VA granted him a 70% disability rating and backdated this rating effective as of August 1, 1994, the date on which the plaintiff had filed his first claim for service-connected PTSD. *Id.* at 10, 217-18, 229-33; Def.'s Statement ¶ 28.

In 2006, the plaintiff filed a claim with the VA to receive benefits as of an earlier effective date. Compl. ¶ 30. The VA, however, denied his request, A.R. at 274-76, and instead forwarded the plaintiff's appeal to the Army Board of Corrections for Military Records ("ABCMR"), *see* Compl. ¶ 30.[4] The VA, however, mistakenly failed to submit the plaintiff's VA and Army records with the appeal and, after reviewing the limited record, the ABCMR denied the plaintiff's request as untimely. *Id* ¶ 30. In response, the plaintiff retained counsel who filed a request with the ABCMR for reconsideration along with several supporting documents on the plaintiff's behalf. *Id.*; A.R. at 15-311.

### C. The ABCMR's Decision Upon Reconsideration

In April 2008, the ABCMR determined that the plaintiff's new evidence warranted waiving the statute of limitations and reopened the plaintiff's request to fully review the merits

---

[4]    The system of awarding disability benefits in the ABCMR and the VA are distinct and based on separate calculations. *Powell v. Marsh*, 560 F. Supp. 636, 641 (D.D.C. 1983). "The VA's rating is based on the applicant's current disability. By contrast, the ABCMR is charged with determining what disability rating would have been appropriate at the time of the applicant's discharge from the Service." *Id*. Accordingly, "[i]t is well established that a VA determination of extent of disability at some post-discharge date, is not binding upon the ABCMR." *Id*.; *see also deCicco v. United States*, 677 F.2d 66, 71 (Ct. Cl. 1982); *Finn v. United States*, 548 F.2d 340, 342 (Ct. Cl. 1977).

of his claim. A.R. at 1-14. In the plaintiff's application for reconsideration, he requested that the ABCMR either void or upgrade his 1968 discharge status.[5] A.R. at 21 (Pl.'s 2007 Application to the ABCMR). In support of his request, he alleged that the Army violated his "Constitutional liberty interest" by misleading him into waiving his right to a hearing. *Id.* at 43. More specifically, the plaintiff claimed that he was never offered "a fully informed notice of the basis [of his discharge] and its effect," and therefore could not "intelligently and knowingly waive a hearing." *Id.* Additionally, the plaintiff argues that the Army acted contrary to established regulations during his 1968 discharge by failing to take into account his diagnosed personality disorder in relationship to his unsuitability discharge for apathy. *See id*. at 41-44.

The ABCMR construed the plaintiff's application as either a claim that the plaintiff had a medical disability at the time of discharge and therefore should have been considered for a medical discharge or that he was wrongfully discharged for unsuitability due to apathy. Def.'s Mot. at 6. Regarding the medical disability claim, the ABCMR determined that there was no evidence that the plaintiff was treated for PTSD symptoms while he was on active duty and that it was reasonable to assume that if the plaintiff had "exhibited any symptoms" of PTSD or other medically disqualifying disabilities, the psychiatrist would have, under the standards at the time, indicated as much and would have recommended that the plaintiff be evaluated by a medical evaluation board ("MEBD"). A.R. at 12 (ABCMR Record of Proceedings). The ABCMR reasoned that:

---

[5] Specifically, the plaintiff asked that the ABCMR void his General discharge for unsuitability due to apathy in 1968 and that he be retroactively placed Honorably on the Army's permanent disability retired list for PTSD and other disabilities with the appropriate disability rating and back pay. A.R. at 21. Alternatively, he requested that the ABCMR either: (1) void the General discharge of 1968 and provide him with an Honorable medical discharge and an appropriate rating for PTSD and other disabilities with an award of disability severance pay; or (2) void the General discharge of 1968 and Honorably discharge him retroactively to September 23, 1969, for completion of his three year enlistment, with back pay and allowances. *Id.*

8

> [s]ince there is no evidence or indication that the [plaintiff] had a condition which was medically disqualifying for retention, his physical condition would not have warranted consideration by a MEBD. Without an MEBD, there would have been no basis for referring him to a [physical evaluation board]. Without a [physical evaluation board,] the [plaintiff] could not have been issued a medical discharge or retired for physical unfitness.

*Id*. at 13. Accordingly, the ABCMR determined that whatever mental problems or other medical impairments the plaintiff may have been suffering from in 1968, they did not qualify him for a service-connected disability.[6] *See id*. at 12.

Addressing the wrongful discharge claim, the ABCMR discussed the various disciplinary reprimands received by the plaintiff under Article 15 and determined that in light of these offenses, "his discharge for unsuitability due to apathy, a defective attitude and inability to expend efforts constructively was appropriate and there [was] no reason to change it." *Id*. at 13. The ABCMR's discussion, however, did not substantively address the plaintiff's due process claim alleging an ineffective waiver. *See id*. at 5-14. Although the ABCMR acknowledged this argument in basic terms under the heading "Counsel's Request, Statement, and Evidence," *id*. at 8, it never addressed the merits of the argument or offered any explanation for its decision not to address it, *see generally id*. at 8-14.

On November 16, 2009, the plaintiff commenced an action in this court challenging the ABCMR's decision to deny his request to set aside or otherwise correct his 1968 discharge. *See generally* Compl. Both parties have filed motions for summary judgment. *See generally* Pl.'s

---

[6] Although the BVA's evaluation determined that the plaintiff's PTSD was service-connected, the ABCMR points out that the VA is not required by law to determine medical unfitness for further military service. A.R. at 317 ¶ 15; 38 U.S.C. §§ 310, 331. The VA, in accordance with its own policies and regulations, awards compensation solely on the basis that a medical condition exists and that the medical condition reduces or impairs the social or industrial adaptability of the individual concerned. *Id.*

9

Cross-Mot.; Def.'s Mot. With those motions ripe for review, the court turns to the parties' arguments and the applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for Judicial Review of Agency Actions

The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. 29, 43 (1983). As long as an agency has "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," courts will not disturb the agency's action. *Md. Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998).

Under § 1552(a) of title 10 of the United States Code, "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The statute directs the Secretary to make such corrections through boards of civilians. *Id.* Although judicial review is available under the APA to review correction-board decisions, courts apply an "unusually deferential application of the arbitrary or capricious standard of the APA" to ensure that "the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings [and thereby] destabilize military command and take the judiciary far afield of its area of competence." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *see also Verplanck v. England*, 257 F. Supp. 2d 182, 187 (D.D.C.

2003) (reiterating the unusual degree of deference afforded to correction-board decisions). The plaintiff bears the burden of showing, by "cogent and clearly convincing evidence," that the decision violated the APA, and must "overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith." *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998); *Smith v. Dalton*, 927 F. Supp. 1, 4 (D.D.C. 1996).

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

### B. The Court Grants in Part the Plaintiff's Motion for Summary Judgment

#### 1. The ABCMR's Failure to Address the Plaintiff's Due Process Argument Violates the APA

The plaintiff alleges that the April 2008 decision by the ABCMR was arbitrary, unsupported by substantial evidence and contrary to Army regulations. Pl.'s Cross-Mot. at 10. In so alleging, the plaintiff reasserts the arguments that he raised before the ABCMR: (1) that his 1968 discharge was improperly characterized as a discharge for "unsuitability-apathy" because the Army failed to adequately provide a connection between the plaintiff's behavior and the discharge for unsuitability and (2) that his 1968 waiver was ineffective because the Army violated his due process rights by failing to provide him with sufficient information regarding the stigmatizing effects of his discharge prior to presenting the waiver. *See id.* at 13; Pl.'s Reply at 2-3.

The defendant argues that the ABCMR thoroughly reviewed all of the evidence and rationally concluded that the plaintiff's 1968 discharge characterization was appropriate. *See*

*generally* Def.'s Mot.  With regard to the plaintiff's due process argument, the defendant counters that any unfairness in the original discharge proceedings was cured because the plaintiff was afforded constitutionally sufficient procedures through subsequent hearings and review by the ABCMR.  Def.'s Reply at 7-8.

As discussed above, the plaintiff expressly argued before the ABCMR that the Army had violated a "Constitutional liberty interest" because it did not offer him a "fully informed notice of the basis [of his discharge] and its effect, to intelligently and knowingly waive a hearing." A.R. at 43.  It is well established that a military review board acts arbitrarily in failing "to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition." *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005); *see also Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)); *Mudd v. Caldera*, 26 F. Supp. 2d 113, 123 (D.D.C. 1998).  Although "an agency's decision need not be a model of analytic precision to survive a challenge," this court can only review a decision that "minimally contains a rational connection between the facts found and the choice made."  *Frizelle*, 111 F.3d at 176 (internal quotations and citations omitted).  Thus, if the ABCMR chooses to disregard a non-frivolous argument,

> it must expressly indicate that it has done so.  Otherwise neither the plaintiff nor [the] court would be able to discern whether the ABCMR considered and was unpersuaded by those factors or whether the ABCMR simply excluded them from its decision making process.  Moreover if the ABCMR excludes those factors from consideration it must explain its rationale for doing so.

*Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993); *see also Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (stating that an arbitrary and capricious standard "mandates that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision").

Here, the plaintiff's due process claim does not appear to be frivolous. The plaintiff suggests that the waiver he executed in 1968 was not an effective waiver of his procedural rights because the Army failed to notify him of the fact that his general discharge for unsuitability due to apathy could prevent him from receiving future benefits from the VA. Pl.'s Cross-Mot. at 8-10. Indeed, the plaintiff's 1968 waiver only advises the plaintiff that with a general discharge under honorable conditions, he "may expect to encounter substantial prejudice in civilian life." Pl.'s Cross-Mot, App. at 9 (Waiver Form). In contrast, the waiver warns those being discharged for "undesirable discharge under conditions other than honorable" that they may "be ineligible for many or all benefits as a veteran under both Federal and State laws." *Id*. In light of the fact that his discharge was a general discharge under honorable conditions as opposed to an "undesirable discharge under conditions other than honorable," *see* A.R. at 379 (Pl.'s Discharge Certificate); Pl.'s Cross-Mot., App. (A.Reg. 635-200 ¶ 1.5) (discussing the five types of discharge certificates), the plaintiff suggests that he reasonably assumed that he would be entitled to receive full benefits after his discharge and that the waiver did not effectively warn him otherwise, Pl.'s Cross-Mot. at 8-9.

Because an administrative discharge may be found void "if it ignores procedural rights or regulations, exceeds applicable statutory authority, or violates minimum concepts of basic fairness," *Casey v. United States*, 8 Cl. Ct. 234, 239 (Cl. Ct. 1985), the court determines that the plaintiff's due process claim was not frivolous and the ABCMR board was required to address it, *see id*. ("Our primary concern in these cases is to prevent the Armed Forces from imposing a penalty on a discharged serviceman without affording him some basic constitutional protection, the essence of which is notice and a hearing."); *see also Perez v. United States*, 850 F. Supp. 1354, 1363 (N.D. Ill. 1994) (observing that "[s]everal courts have held that [a] servicemember's

liberty interests may be infringed where the servicemember is discharged" under less than honorable conditions and acknowledging that in such circumstances constitutional due process protections are required").

Although the ABCMR vaguely acknowledged the plaintiff's due process argument, *see* A.R. at 8 (reiterating the plaintiff's due process argument under the heading "Counsel's Request, Statement, and Evidence" but providing no further analysis), it never addressed this argument in its discussion or explained why it chose not to address it, *see generally* A.R. at 8-14. Presuming that the ABCMR believed that the plaintiff's due process claims lacked merit, it was nevertheless required to provide sufficient reasoning which would allow this court to conduct a proper review. *See Matlovich v. Sec'y of the Air Force*, 591 F.2d 852, 857 (D.C. Cir. 1978) (observing that the "agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review"). Because the plaintiff raised a non-frivolous due process claim at the administrative level which the ABCMR did not address in its decision, the court determines that the ABCMR acted arbitrarily. *See Roberts v. Harvey*, 441 F. Supp. 2d. 111, 121 (D.D.C. 2006) (holding that the military review board violated the APA by failing to address an argument "regarding the validity of [plaintiff's] waiver of his right to counsel, a hearing or personal appearance before a board of officers, and the right to submit statements on his own behalf to the discharge authority").

The court therefore remands this issue to the ABCMR so that it can adequately address the plaintiff's due process claim. *See, e.g.*, *id*.; *Appleby v. Harvey*, 517 F. Supp. 2d. 253, 265-66 (D.D.C. 2007) ("[B]ecause it appears the plaintiff raised his inadequacy notice argument with the ABCMR, and the argument is not frivolous on its face, the Court must conclude that the ABCMR's failure to address it was arbitrary and this case must be remanded."); *Rominger v.*

14

*United States*, 72 Fed. Cl. 268, 273-74 (Fed. Cl. 2006) (remanding the case because the ABCMR's decision "failed to adequately consider the important issues that needed to be analyzed before rendering a decision"). Further, the court observes that at this juncture it would be premature to engage in judicial review of the plaintiff's claims challenging the characterization of his 1968 discharge – claims that the ABCMR did reach in rendering its decision. For instance, a decision by the ABCMR that the plaintiff's due process claim has merit may very well render the plaintiff's other claims moot. *Frizelle*, 111 F.3d at 177 (remanding for further review by the military board after holding that the board had acted arbitrarily in "not[] respond[ing] to two of [the plaintiff's] arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition"); *see also Puerto Rico Higher Educ.*, 10 F.3d at 849 (remanding to the agency for reconsideration of the plaintiff's claims because the agency's actions were not supported by reasoned decision-making but declining to express any views as to the merits of the case).

Accordingly, the court remands to the plaintiff's due process claim to the ABCMR for further administrative proceedings. In addition, the court holds in abeyance its review of the plaintiff's other claims challenging the characterization of his 1968 discharge. *See Menkes v. Dep't of Homeland Sec.*, 486 F.3d 1307, 1314-15 (D.C. Cir. 2007) (instructing the district court to remand one of the plaintiff's claims to the agency for further reasoning and further directing the district court to retain jurisdiction over the remaining claims because resolution of the remanded claim may have rendered the plaintiff's other claims moot); *Fox v. Dist. of Columbia*, 83 F.3d 1491, 1497 (D.C. Cir. 1996) (instructing the district court to hold certain claims brought by the plaintiff in abeyance pending an agency's action on a separate claim brought by the plaintiff because the agency action on that claim may moot the plaintiff's other claims).

## IV. CONCLUSION

For the foregoing reasons, the court denies in part and holds in abeyance in part the defendant's motion for summary judgment and grants in part and holds in abeyance in part the plaintiff's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this day of 24th March, 2011.

                                                              RICARDO M. URBINA
                                                          United States District Judge