UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BABATU M. RUDO,                 )<br>                                 )<br>        Plaintiff,               )<br>                                 )<br>    v.                           )<br>                                 )<br>JOHN McHUGH,                     )<br>Secretary of the Army            )<br>                                 )<br>        Defendant.               )<br>                                 ) | Civil Action No. 09-02172 (GK) |

### MEMORANDUM OPINION

Babatu Rudo[1] ("Plaintiff" or "Rudo"), a former service member in the United States Army ("Army"), brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. and the Fifth Amendment's Due Process Clause against John McHugh ("Defendant"), Secretary of the Army, challenging the Army Board for Correction of Military Records' ("ABCMR" or "Board") decision regarding the characterization of his discharge from the Army.

This matter is before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. No. 35] and Plaintiff's Cross-Motion for Summary Judgment [Dkt. No. 41]. Upon consideration of the Motions, Oppositions, Replies, the administrative record, and the entire record herein, and for

---

[1] In 1988, Plaintiff legally changed his name from Fred Myers to Babatu Rudo. Administrative Record ("AR") at 256 [Dkt. No. 8].

the reasons set forth below, Defendant's Motion is **granted** and Plaintiff's Motion is **denied**.

## I.    BACKGROUND

### A.    Regulatory Framework

Under the Army Regulations in place in 1968, an Army soldier could be discharged upon a finding that he was "unsuitable" for further military service. See Administrative Record ("AR")[2] at 66 (Army Regulation ("A.Reg.") 635-200, 635-212 ¶ 1). A discharge for unsuitability was proper if the soldier exhibited any one of the following conditions: "(1) Inaptitude, (2) Character and behavioral disorders, (3) Apathy (lack of appropriate interest), defective attitudes and inability to expend effort constructively, (4) Alcoholism, (5) Enuresis (bedwetting), or (6) Homosexuality." AR at 67 (A.Reg. 635-212 ¶ (6)(b)).

_____

[2] On April 1, 2010, Defendant filed an Administrative Record in support of his First Motion for Summary Judgment consisting of 427 pages, numbered 1 through 427. On June 29, 2012, Defendant filed a Supplemental Administrative Record in Support of his present Motion to Dismiss or, in the Alternative, for Summary Judgment consisting of 61 pages, numbered 428 through 489 [Dkt. No. 34]. See, infra, Section I.C. (discussing in detail the procedural background of this matter). Because Defendant continued the sequential pagination of the Supplemental Record beginning with page 428, the Court will reference the original Administrative Record and the Supplemental Record collectively as the "Administrative Record" or "AR."

Before removing a soldier on "unsuitability" grounds, the Army was required to establish: (1) that the soldier was unlikely to develop "sufficiently to participate in further military training and/or become a satisfactory soldier" and (2) that the soldier met the "retention medical standards" in place at the time. See id. at 66 (A.Reg. 635-212 ¶ 3(b)).

To satisfy these requirements, a soldier's unit commander was required to refer the soldier for physical and mental evaluations and to provide the medical examiners with "[s]ufficiently detailed information about the reasons for considering the individual . . . unsuitable" so that the medical examiners would have a thorough understanding of the contemplated action. Id. at 68 (A.Reg. 635-212 ¶ 8).

If the medical examiners determined that the soldier was medically unfit for service, the discharge process pursuant to "unsuitability" grounds was halted. Id. at 69 (A.Reg. 635-212 ¶ 9). If, however, the medical examiners determined that the soldier met "retention medical standards," i.e., that he was medically fit for further military service, his discharge for unsuitability would be approved and the soldier would be sent back to his commanding officer for further processing of his discharge. Id. (A.Reg. 635-212 ¶ 9).

- 3 -

Once the soldier was medically cleared for an unsuitability discharge, the commanding officer was required to provide him with the "basis of the contemplated separation and its effect." Id. (A.Reg. 635-212 ¶ 10(a)(1)-(3)). The "effect" of a soldier's separation was governed by the characterization of his service. Pl.'s First Cross-Mot. for Summ. J. App. ("Pl.'s App.") at 13 [Dkt. No. 13-4] (A.Reg. 635-200 ¶ 1.8).

In 1968, a soldier's service could be characterized as one of five general types of discharges, ranging from the most satisfactory characterization of service to the least satisfactory: "(1) Honorable, (2) General [u]nder honorable conditions, (3) Undesirable [u]nder conditions other than honorable, (4) Bad Conduct [u]nder conditions other than honorable, [or] (5) Dishonorable." Id. at 12 (A.Reg. 635-200 ¶ 1.5).

An unsuitability separation could be characterized as either an "Honorable or General discharge," depending upon the soldier's service record. AR at 66 (A.Reg. 635-212 ¶ 4(b)). Either of those characterizations entitled a soldier to "full Federal rights and benefits," while "an undesirable or bad conduct discharge may or may not deprive the individual of veterans' benefits administered by the Veterans Administration." Pl.'s App. at 13 (A.Reg. 635-200 ¶ 1.8).

- 4 -

The commanding officer overseeing the discharge process was required to explain to the soldier his rights. AR at 69 (A.Reg. 635-212 ¶ 10(a)(1)-(3)). These rights included the right of the soldier to present his case before a board of officers, to submit statements on his own behalf, and to be represented by counsel. Id. Alternatively, the soldier could waive these rights in writing. Id. A soldier who chose to waive his rights was required to submit a signed statement indicating that he had "been advised of the basis for his contemplated separation and its effect and the rights available to him." Pl.'s App. at 9 (A.Reg. 635-212). This statement read:

> I understand that I may expect to encounter substantial prejudice in civilian life in the event a general discharge under honorable conditions is issued to me. I further understand that as the result of issuance of an undesirable discharge under conditions other than honorable, I may be ineligible for many or all benefits as a veteran under both Federal and State laws, and that I may expect to encounter substantial prejudice in civilian life.

Id.

After the soldier had been adequately informed of his rights under the applicable regulations, and either exercised or waived those rights in a signed statement, he was issued a final discharge certificate stating "the specific reason and authority for [his] discharge," effectively ending his service in the Army. Id. at 10 (A.Reg. 635-212 ¶ 23).

- 5 -

**B.  Factual Background[3]**

Plaintiff served in the Army from September 1966 until November 1968. Complaint ("Compl.")[4] ¶¶ 1, 21 [Dkt. No. 1]. During his tenure with the Army, Plaintiff received several non-judicial punishments under Article 15 of the Uniform Code of Military Justice[5] for infractions such as visiting "off-limits" bars while in Vietnam, smoking marijuana, and going "absent without leave" or "AWOL." Id. ¶¶ 7, 9-11.

In October 1968, as a result of Plaintiff's multiple Article 15 reprimands, his commander reduced his rank and recommended that he receive an administrative discharge for "unsuitability" due to apathy pursuant to Army Regulation 635-

---

[3] The following facts are drawn from the Factual Background section of the District Court's March 24, 2011 Memorandum Opinion [Dkt. No. 22 at 4-7]. The facts as set forth in that Opinion are referenced by both parties and, unless otherwise noted, they are not in dispute. See Defendant's Statement of Facts ("Def.'s Statement") [Dkt. No. 35-3]; Plaintiff's Statement of Facts (Pl.'s Statement") [Dkt. No. 41-2].

[4] On November 16, 2009, Plaintiff filed his Complaint. On March 16, 2012, Plaintiff filed an Amended Complaint [Dkt. No. 25]. While styled as an Amended Complaint, the Court considers it a Supplemental Complaint because Plaintiff "reasserts his other claims held in abeyance by the Court," incorporating the facts and claims originally asserted. Amended Complaint ("Am. Compl.") ¶ 51. Accordingly, the Court, like the parties, refers to both complaints.

[5] A reprimand under Article 15 of the Uniform Code of Military Justice is a form of non-judicial military punishment that permits commanders to administratively discipline a service-member without a court-martial. See 10 U.S.C.A. § 815(a).

212. Id. ¶ 12; AR at 65-72.

As part of the discharge process, Plaintiff received physical and mental health evaluations. AR at 100-107. The evaluating physician determined that Plaintiff was suffering from a "back condition," but he made no other significant diagnoses or findings with respect to Plaintiff's physical health. Id. at 100-103. Accordingly, the physician concluded that Plaintiff was physically fit for further military service and referred Plaintiff for a mental health examination. Id.

A psychiatrist in the Army's psychiatric clinic evaluated Plaintiff and diagnosed him with a "[s]ociopathic personality with passive-aggressive features." Id. at 106. The psychiatrist determined that Plaintiff would "not adjust to further military service and [that] further rehabilitative efforts probably [would] be nonproductive." Id. Specifically, the psychiatrist determined that:

> [Plaintiff] gives a history of marked social inadaptability prior to and during service. He has been arrested at least four times for such offenses as disorderly conduct and under-age drinking. He joined the Army in September 1966 after he had impregnated one of his girlfriends and was not willing to pay the doctor's bill. While in the Army he has amassed several Articles 15 for such offenses as missing formation, going to an off limits bar in Vietnam, having possession of illegal drugs and AWOL. He uses poor judgment, is not committed to any productive goals and is completely unmotivated for further service.

Id. The psychiatrist then concluded that Plaintiff was "mentally responsible, able to distinguish right from wrong and to adhere to the right, and ha[d] the mental capacity to participate in [administrative discharge] proceedings," and recommended that Plaintiff be discharged pursuant to Army Regulation 635-212 for unsuitability. Id.

Plaintiff's medical reports were then forwarded to his commander, and his discharge for unsuitability was approved. Plaintiff chose to waive his rights to appear before an administrative discharge board, to submit statements on his own behalf, and to be represented by counsel, Am. Compl. ¶ 32; Def.'s Statement ¶ 21, and signed the standard waiver statement as described under Army Regulation 635-212, Def.'s Statement ¶ 22; see Pl.'s App. at 9 (Waiver Form).

On November 5, 1968, after serving for just over two years in the Army, Plaintiff was administratively discharged for unsuitability due to apathy, a separation under the category of a "General" discharge "under honorable conditions." Am. Compl. ¶ 32. Plaintiff's discharge form indicated that "[a]pathy, defective attitudes and inability to expend efforts constructively," were the reasons for his separation. AR at 379 (Pl.'s Discharge Certificate).

- 8 -

Following his administrative discharge, Plaintiff continued to suffer from mental health problems as well as drug addiction. Am. Compl. ¶ 35. Plaintiff made repeated attempts to procure disability benefits from the Department of Veterans Affairs ("VA"), claiming that his drug dependence and mental problems were "service-connected disabilities."[6] Def.'s Statement ¶¶ 27–30. The VA denied his requests for benefits because it determined that Plaintiff's "drug dependence and mental problems . . . were not service connected disabilities under the law."[7] Id. ¶ 29.

It was only after the recognition of Post-traumatic Stress Disorder ("PTSD") as a psychiatric disorder in the early 1980s that Plaintiff was able to begin distinguishing his mental health claim from his personality disorder. AR at 7–8.

In July 1997, after several unsuccessful attempts to prove that his PTSD was service-connected, Plaintiff submitted new evidence to the VA and asked the VA's Board of Veterans' Appeals

---

[6] A veteran is ineligible for VA healthcare or disability compensation unless an injury or illness is "service-connected," or the veteran otherwise qualifies due to his indigent status. See 38 C.F.R. § 3.303.

[7] At the time of his discharge, Plaintiff's mental health issues were considered to be a "pre-service" disability. A personality disorder diagnosed in military health records may be considered a "pre-service," or a pre-existing condition and therefore not an illness or injury that is service-connected. 38 C.F.R. § 3.303(c).

- 9 -

("BVA") to re-open his claim. Id. at 10. The BVA concluded that Plaintiff's new evidence: (1) revealed his involvement in several hostile actions in Vietnam and (2) established a service-connection for PTSD. Id. Accordingly, the BVA granted Plaintiff a 70% disability rating and backdated this rating effective as of August 1, 1994, the date on which Plaintiff had filed his first claim for service-connected PTSD. Id. at 10, 217-18, 229-33.

In 2006, Plaintiff filed a claim with the VA "to receive benefits as of an earlier effective date." Am. Compl. ¶ 39. The VA, however, denied Plaintiff's claim, AR at 274-76, and instead forwarded the claim to the ABCMR, see Am. Compl. ¶ 39.[8]

According to Plaintiff, the VA mistakenly failed to submit Plaintiff's VA and Army records to the ABCMR and, after reviewing the limited record, the ABCMR denied Plaintiff's claim on statute of limitations grounds. Id. Plaintiff then retained counsel and filed a request for reconsideration along with his

---

[8] The system of awarding disability benefits in the ABCMR and the VA are distinct and based on separate calculations. Powell v. Marsh, 560 F.Supp. 636, 641 (D.D.C. 1983). "The VA's rating is based on the applicant's current disability. By contrast, the ABCMR is charged with determining what disability rating would have been appropriate at the time of the applicant's discharge from the Service." Id. Accordingly, "[i]t is well established that a VA determination of extent of disability at some post-discharge date, is not binding upon the ABCMR." Id.

VA and Army records. Id. ¶ 40.

### C.   Procedural Background

#### 1.   ABCMR's Decision upon Reconsideration

The ABCMR determined that Plaintiff's new evidence warranted waiving the statute of limitations and, accordingly, it agreed to consider the merits of his claim. AR at 1-14. On April 8, 2008, the ABCMR issued its decision, denying Plaintiff's request for relief. Id.

In his request for reconsideration, Plaintiff asked the ABCMR to either void or upgrade his 1968 discharge status. Id. at 21. Plaintiff claimed that such action was warranted because the Army violated his "[c]onstitutional liberty interest" by misleading him into waiving his right to a hearing, id. at 43, and because the Army acted contrary to established regulations by failing to consider the effect of his diagnosed personality disorder on his separation, see id. at 41-44.

The ABCMR construed Plaintiff's request as either: (1) a claim that Plaintiff had a medical disability at the time of discharge and therefore should have been considered for a medical discharge or (2) a claim that he was wrongfully discharged for unsuitability due to apathy. Id. at 5-14. The ABCMR's decision did not substantively address Plaintiff's due process claim.

- 11 -

Regarding the medical disability claim, the ABCMR determined that Plaintiff did not qualify for a service-connected disability. Id. at 12. Addressing the wrongful discharge claim, the ABCMR determined that "[Plaintiff's] discharge for unsuitability due to apathy, a defective attitude and inability to expend efforts constructively was appropriate and [that] there [was] no reason to change it." Id. at 13.

## 2.   District Court's March 2011 Opinion

On November 16, 2009, Plaintiff commenced this action, challenging the ABCMR's denial of his request for relief. Plaintiff asked "[t]hat the Court set aside the BCMR decision limited to denial of Plaintiff's request to set aside the General service characterization for unsuitability, and remand to the BCMR for appropriate relief." Compl. at 8.

On March 24, 2011, after briefings by the parties on their first cross-motions for summary judgment, the District Court granted in part Plaintiff's initial cross-motion, remanding the case to the ABCMR for the limited purpose of addressing Plaintiff's due process claim. Order (March 24, 2011) [Dkt. No. 21]. The Court further ordered that Plaintiff's "APA claims challenging the characterization of his 1968 military discharge are held in abeyance." Id.

### 3.   ABCMR's Decision on Remand

On November 1, 2011 the ABCMR issued its decision on remand, again denying Plaintiff's request for relief. AR at 430-34.

The ABCMR determined that "[i]n the absence of evidence to the contrary, it is presumed that all requirements of law and regulations were met and [that] the rights of the applicant were fully protected throughout the separation process and that the type of discharge, the reason for separation, and characterization of service were appropriate considering all the facts of the case." Id. at 433.

### 4.   Motions Presently Before the Court

On March 16, 2012, Plaintiff filed his Amended Complaint. Plaintiff again asked "[t]hat the Court set aside BCMR decision limited to denial of plaintiff's request to set aside the 1968 general service characterization for unsuitability, and remand to the BCMR for appropriate relief." Am. Compl. at 13.

On June 29, 2012, Defendant filed his Motion to Dismiss or, in the Alternative, for Summary Judgment. On October 23, 2012, Plaintiff filed his Cross-Motion for Summary Judgment. On January 4, 2013, Defendant filed his Opposition to Plaintiff's Cross-Motion and Reply in Support of his Motion [Dkt. No. 45].

On February 28, 2013, Plaintiff filed his Reply in Support of his Cross-Motion [Dkt. No. 48].

## II.   STANDARD OF REVIEW

### A.   Judicial Review of Military Correction-Board Decisions

Under § 1552(a) of Title 10 of the United States Code, "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The statute directs the Secretary to make such corrections through boards of civilians. Id.

Under the APA, a court may set aside an agency's decision only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. §§ 702(2)(A), (2)(E). The substantial evidence standard is "highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rossello v. Astrue, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

Courts review military correction-board decisions under an "unusually deferential application of the arbitrary or

- 14 -

capricious standard," <u>Kreis v. Sec'y of Air Force</u>, 866 F.2d 1508, 1514 (D.C. Cir. 1989), in order to ensure that "courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings [and thereby] destabilize military command and take the judiciary far afield of its area of competence," <u>Cone v. Caldera</u>, 223 F.3d 789, 793 (D.C. Cir. 2000). "Perhaps only the most egregious decisions may be prevented under such a deferential standard of review."[9] <u>Kreis</u>, 866 F.2d at 1515.

To survive judicial review, the military agency's decision "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." <u>Id.</u> at 1514-15. A court "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD

---

[9] In reaching this determination, the Court of Appeals reasoned that, "[w]hile the broad grant of discretion [under the statute] implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination" because "[i]t is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '<u>when he considers it necessary</u> to correct an error or remove an injustice,' 10 U.S.C. § 1552(a), than it is if he is required to act whenever a court determines that certain objective conditions are met, <u>i.e.</u>, there has been an error or injustice." <u>Kreis</u>, 866 F.2d at 1514 (emphasis in original).

Pharm., Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (internal quotation marks omitted).

## B. Judicial Review of Constitutional Challenges to Agency Actions

The APA also provides that "a reviewing court shall 'hold unlawful and set aside agency action' that is 'not in accordance with the law' or 'contrary to constitutional right.'" Poett v. U.S., 657 F. Supp. 2d 230, 241 (D.D.C. 2009) (quoting 5 U.S.C. §§ 706(2)(A) & (B)). In contrast to the deferential standard of review described above, "a court's review of 'constitutional challenges to agency actions . . . is de novo.'" Id. (quoting Cullman Reg'l Med. Ctr. v. Shalala, 945 F. Supp. 287, 293 (D.D.C. 1996)). "[A] reviewing court owes no deference to the agency's pronouncement on a constitutional question," and must instead make "an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making." Lead Indus. Ass'n v. Envtl. Prot. Agency, 647 F.2d 1130, 1173-74 (D.C. Cir. 1980) (internal quotation marks omitted).

## III. ANALYSIS

Plaintiff claims that the ABCMR's decision "refusing to set aside [his] General Discharge was arbitrary, unsupported by substantial evidence, contrary to Army regulation, or a gross injustice." Pl.'s First Cross-Mot. for Summ. J. at 10 [Dkt. No.

13].[10]  Plaintiff  also  claims  that  "[t]he  1968  discharge

proceedings violated minimum constitutional due process." Pl.'s

Cross-Mot. for Summ. J. at 11.

A. **The ABCMR's Decision to Uphold Plaintiff's Discharge**
   **Characterization Was Not Arbitrary or Capricious**

Plaintiff argues that he was wrongfully discharged for

unsuitability  due  to  apathy  because  "[t]he  Army-diagnosed

sociopathic  personality  disorder  qualified  as  a  reason  for

unsuitability." Pl.'s First Cross-Mot. for Summ. J. at 10.

Plaintiff contends that, contrary to Army Regulation 635-212,

the  ABCMR  failed  to  consider  his  "diagnosed  mental  condition  in

relation to the misconduct under review." Id.; Compl. ¶ 23 ("The

commander and Army had no authority, nor support to disagree and

issue  an  incorrect,  mislabeled  discharge.  This  was  in  effect

a[n] ultra vires delegation of the psychiatric examination

process  to  the  commander.").  Defendant  responds  that  "[t]he

ABCMR  properly  concluded  [that]  Plaintiff's  misconduct  and

military  performance  records  supported  the  discharge  [that]  he

_____

[10] Plaintiff's present Cross-Motion for Summary Judgment only
addresses his due process claim and "refers the Court to those
parts of his prior pleadings on the other issue[] [held in
abeyance]," specifically directing the Court to his First Cross-
Motion for Summary Judgment. Pl.'s Cross-Mot. for Summ. J. at 2.
Accordingly, the Court refers to that motion for purposes of
resolving the claim that was held in abeyance.

received."[11] Def.'s Mot. for Summ. J. at 13.

In deciding to uphold Plaintiff's discharge for unsuitability due to apathy, the Board considered and discussed Plaintiff's military personnel records,[12] noting that he "received several non-judicial punishments (NJP) for offenses including missing information, going to an off-limits bar in Vietnam, possession of illegal drugs, and being absent without leave (AWOL)." Id. at 9, 13.

The ABCMR also considered and discussed the connection between Plaintiff's diagnosed mental condition and his pattern of misconduct. The Board specifically referred to Plaintiff's psychiatric diagnosis, noting that he was "evaluated by a psychiatric clinic with a discharge diagnosis of sociopathic

---

[11] Defendant additionally argues that "Plaintiff's [APA] claim must be dismissed because he waived judicial review by failing to raise the claim to the Board." Def.'s Mot. for Summ. J. at 5 (emphasis added). More specifically, Defendant contends that "Plaintiff asked the ABCMR to consider three alternative options in correcting his record" but "now improperly asks this Court to consider a fourth alternative not previously presented to the Board." Id. at 6. Defendant's argument has no merit. While Plaintiff has introduced an additional suggestion for correcting his record, he certainly has not raised a 'claim' that was not previously presented to the Board. Moreover, Plaintiff's request for relief, i.e., "that the Court set aside BCMR decision . . . and remand to the BCMR for appropriate relief," was entirely proper. Am. Compl. at 13 (emphasis added).

[12] The ABCMR also considered, among other evidence, Plaintiff's: pre-service criminal record; military medical records; post-discharge applications for benefits; and post-discharge medical records. AR at 5-12.

personality with passive feature." Id. at 9. Importantly, the Board also noted that "[t]he psychiatrist determined that the applicant was mentally responsible, able to distinguish right from wrong and adhere to the right." Id.

Considering the record before it, the ABCMR then determined that Plaintiff "used poor judgment, was not committed to any productive goals, and was completely unmotivated for further service" and concluded that his "discharge under the provisions of Army Regulation 635-212 for unsuitability due to apathy, a defective attitude, and inability to expend efforts constructively was appropriate and [that] there is no reason to change it." Id. at 13.

As an initial matter, the ABCMR's decision was not contrary to Army Regulation 635-212, which explicitly allows an individual to be discharged for unsuitability due to apathy even where that individual has an accompanying mental disorder. The regulation states that "individuals considered for elimination may attempt to excuse immature, inadequate, and undisciplined behavior on the basis of minor or non-disabling illness" but that "[t]he presence of a physical or mental disease or defect-producing impairment of function insufficient to warrant [a medical separation] is no bar to discharge for unsuitability" due to apathy. AR at 67 (A.Reg. 635-212 ¶ 6(b)(3)) (emphasis

added). Therefore, the Court concludes that Plaintiff's Army-diagnosed personality disorder did not preclude the Army from discharging him for unsuitability due to apathy.

Affording the ABCMR an "unusually deferential application of the arbitrary or capricious standard," Kreis, 866 F.2d at 1514, the Court further concludes that the ABCMR adequately examined the record before it, including Plaintiff's pattern of misconduct and his psychiatric diagnosis, and "articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," MD Pharm., Inc., 133 F.3d at 16. Moreover, Plaintiff's significant pattern of misconduct, especially in light of the psychiatrist's determination that he was able to distinguish right from wrong, at a minimum, constitutes "relevant evidence as a reasonable mind might accept as adequate to support" the ABCMR's decision. Rossello, 529 F.3d at 1185.

Accordingly, the Board's decision to uphold Plaintiff's discharge for unsuitability due to apathy was not arbitrary or capricious, and it certainly was not the sort of "most egregious decision[], that the Court may set aside. Kreis, 866 F.3d at 1515.

**B.    The   Army   Did   Not   Violate   Plaintiff's   Due   Process
Rights**

Plaintiff     claims     that     the     Army     "violated     minimum
constitutional due process" because "the discharge procedure for
unsuitability [due to] apathy failed to inform him that the
accompanying 'discharge diagnosis' of personality disorder would
deny full VA benefits." Pl.'s Cross-Mot. for Summ. J. at 11.
Plaintiff argues that, as a result of his discharge diagnosis,
he was deprived of his "liberty interest" in "free VA or private
medical care" and "disability compensation."[13] Pl.'s Cross-Mot.
for  Summ.  J.  Reply  at  6  (emphasis  added).  Because  these
purported   interests   are   more   accurately   characterized   as
property interests, the Court treats them as such.

Defendant disputes Plaintiff's claim, arguing that "[t]he
ABCMR correctly concluded that Plaintiff failed to demonstrate
that his due process rights were violated." Def.'s Mot. for
Summ. J. at 17.

The  procedural  component  of  the  Due  Process  Clause  is
intended to "impose constraints on governmental decisions which

---

[13] It is worth noting that, soon after his discharge, Plaintiff
began receiving certain VA benefits and qualified for placement
in rehabilitation and counseling programs. For instance, in the
early 1970s, Plaintiff received 30% disability rating from the
VA for his leg and back problems, AR at 133, and throughout the
1960s and 1970s, Plaintiff was admitted to several VA hospitals
and treated in twelve drug rehabilitation programs, Compl. ¶ 35;
AR at 129-44, 158.

deprive individuals of 'liberty' or 'property' interests."
Matthews v. Eldrige, 424 U.S. 319, 332 (1976). In order to
maintain a due process claim Plaintiff "must establish that the
government deprived him of a liberty or property interest."
Chamness v. McHugh, 814 F. Supp. 2d 7, 16 (D.D.C. 2011) (citing
Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).
Indeed, "[o]nly after finding the deprivation of a protected
interest do[es] [the Court] look to see if the [government's]
procedures comport with due process." Am. Mfrs. Mut. Ins. v.
Sullivan, 526 U.S. 40, 59 (1999).

Plaintiff has not asserted a cognizable property interest
of which the government has deprived him. Plaintiff is
essentially arguing that his Army diagnosis in 1968 resulted in
the deprivation of certain VA benefits that he expected to
receive after his discharge. However, "[t]he Supreme Court has
explained that property interests arise in specific benefits
that a person has already acquired" but that where "[a]
plaintiff is seeking to acquire disability benefits . . . no
property interest is implicated." Powell v. Marsh, 560 F. Supp.
636, 641 n.6 (D.D.C. 1983) (emphasis in original) (citing Board
of Regents v. Roth, 408 U.S. 564, 575 (1983)).

Therefore, a former service-member, like Plaintiff, "who
might qualify for potential future veterans' benefits," does not

have "a due process property interest in the expectation of those benefits." Owings v. Brown, 86 F.3d 1178, 1178 (Fed. Cir. 1996); Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) ("To have a property interest in a benefit . . . [a person] must have more than a unilateral expectation of it. [She] must instead have a legitimate claim of entitlement to it.").[14]

Having concluded that Plaintiff's "due process claim falters for lack of property interest . . . [the Court] need go no further" with the due process analysis. Sullivan, 526 U.S. at 65. Accordingly, Plaintiff has not established a violation of his due process rights.

---

[14] Moreover, even assuming that Plaintiff had a property interest in his expectation of future VA benefits, the Administrative Record does not support a finding that the Army deprived Plaintiff of those benefits. Although it is correct that a number of Plaintiff's requests for benefits were denied, those requests were not denied because of the Army's discharge diagnosis. Rather, the VA denied several of Plaintiff's requests for mental health related benefits because the VA determined, based on its own evaluations, that Plaintiff's disabilities were not service-connected. See, e.g., AR at 172-73 (September 15, 1983 VA Decision relying on then-current VA physical and psychiatric examinations to conclude that "[p]ost traumatic stress neurosis was not found"). Thus, the Administrative Record does not show that the Army "deprived [Plaintiff] of a liberty or property interest." Chamness, 814 F. Supp. 2d at 16.

## IV.   CONCLUSION

Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons set forth in this Memorandum Opinion, Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment is **granted** and Plaintiff's Cross-Motion for Summary Judgment is **denied.**

March 20, 2013
Gladys Kessler
United States District Judge

Copies to: attorneys on record via ECF

- 24 -